FRANK R. HUBACHEK v. MAXBASS SECURITY BANK.[1]

February 9, 1912.

Nos. 17,447—(214).

**Unmarketable title — sale by guardian.**

In an action involving an executory contract for the sale of real property located in the state of North Dakota, the title to a part of which was acquired through a guardian's sale, it is *held* that the failure of the guardian to give the sale bond required by the statutes of that state justified the vendee in refusing the title as not marketable.

Action in the district court for Hennepin county to recover $1,000 which defendant had converted to its own use. The answer was a

[1] Reported in 134 N. W. 640.

[Note] Necessity of bond by guardian to make his sale of land valid, see note in 33 L.R.A. 761.

What is a marketable title, see note in 4 L.R.A.(N.S.) 1170.

general denial. The case was tried before Holt, J., who made findings and as conclusions of law found that the contract in question was void at the expiration of six months from and after July 25, 1910; that there was sufficient uncertainty as to the validity of the proceedings taken to divest the minors of their interest in a certain quarter section of land, that a court of equity should not in any event compel plaintiff to accept title to the land; that the three mortgages were valid and subsisting mortgages on the property, and that plaintiff was entitled to $1,000 with interest. From an order denying defendant's motion for a new trial, it appealed. Affirmed.

*W. A. McDowell,* for appellant.

*George S. Grimes* and *Louis A. Hubachek,* for respondent.

BROWN, J.

The facts of this case, so far as pertinent to the controlling question, are as follows:

In June, 1910, plaintiff entered into a contract with Charles E. Fees and Elizabeth Fees, his wife, for the purchase of certain lands owned by the Fees in the state of North Dakota. The contract was executory, and required a conveyance of the land, three quarter sections, free and clear of all incumbrances, upon the payment by plaintiff of the purchase price, $35 per acre. At the time the contract was prepared and executed plaintiff paid $1,000 upon the purchase price, depositing the same with defendant in this action, to be paid over to the Fees on the completion of the transaction. Defendant was, according to the findings of the trial court, acting as the agent of the Fees. The contract contained, among other provisions, the following:

"The first parties [Fees] will, within fifteen days from this date, deliver to the second party [plaintiff] at his office in Minneapolis a complete abstract of title to said land prepared by a reliable abstracter. The second party shall have twenty days to examine the same, and if the title to said land is not perfect of record, and cannot be made so in the first parties within ninety days from this

date, then this agreement shall be void, and the money deposited by the second party, as hereinafter provided, shall be returned to the second party at his said office; but if the title to said land is perfect of record, * * * or is made perfect * * * within the time aforesaid, and the balance of the purchase price is not paid as herein provided for, then the deposit this day made by the second party shall be forfeited to the first parties. Time is of the essence of this contract."

The abstract of title was furnished as required by the contract, and disclosed mortgages against a part of the land and a defect in the title to the remainder, and these facts were pointed out to defendant, representing the Fees.

It appears that the tract of land to which the title was claimed to be defective formerly was owned by one Katie Zeitler, who died intestate, leaving surviving her husband and two minor children. In the administration of her estate the probate court of Bottineau county, North Dakota, the court having jurisdiction thereof, decreed this land to the surviving husband, when by the laws of that state it descended in undivided third interests to the husband and minor children. This was brought about by means of some adjustment of the rights of the surviving husband and children, not necessary to be here stated. The Fees thereafter acquired by conveyance from the husband of Mrs. Zeitler the title so decreed to him by the probate court. This was one of the defects in the title of which plaintiff complained, and to enable the Fees to perfect it by proper proceedings in the probate court the time for the performance of the contract here involved was extended by written consent of the parties until January 25, 1911. It was then conceded by the parties that the probate decree assigning the land to the husband of Mrs. Zeitler, to the exclusion of the minor heirs, was void, and it was understood and agreed that the Fees should by proper proceedings in the Dakota courts acquire the title of the minors. To this end the Fees employed attorneys to conduct the proceeding.

The title was perfected, if at all, in this manner: A guardian for the persons and property of the children was duly appointed

in North Dakota. The guardian petitioned the probate court to vacate the decree by which the land was assigned to the husband, and in August, 1910, the petition was granted, the former decree set aside, and a new one entered decreeing the husband and children the owners of the land in undivided third interests. Thereafter the guardian commenced proceedings for the sale of the interests of the minors, and an order of the probate court was duly entered authorizing the sale. The sale was subsequently made, and Charles E. Fees, one of the parties to this contract, became the purchaser. The minor children were six and nine years of age, respectively. Upon the report of the acquisition of this title in the manner stated, plaintiff discovered several defects therein and declined to accept it.

One of the defects so pointed out was the failure of the guardian to give the bond required by the statutes of North Dakota before making the sale of the land under the order of the court. The statutes of that state provide (section 8270, Revised Code 1905):

"Every guardian authorized to sell real estate must, before the sale, give bond with sufficient sureties, to be approved by the judge, with condition to sell the same in the manner and to account for the proceeds of the sale as provided for in this chapter and chapter 5 of this Code."

Section 8050 of chapter 5 provides that: "Whenever an executor, administrator or guardian is authorized to sell or mortgage any real estate, he must in like manner be required to give an additional bond in a sum equal to twice the probable amount to be realized upon such sale or mortgage. But such additional bond may be dispensed with by the decree authorizing such sale or mortgage, when it appears to the satisfaction of the court that the former bond of such executor, administrator or guardian is at least twice the value of the estate remaining in his hands together with the amount of such increased liability and is in all other respects sufficient."

At the time the guardian was appointed he gave the usual and necessary bond; but no additional bond was given prior to the sale as required by these statutes, nor was the giving of the same dispensed with, by the decree authorizing the sale or otherwise. This,

in the opinion of plaintiff, rendered the guardian's sale void—at least, of doubtful validity—and he declined to accept the same. He was advised by an attorney of North Dakota that the title was defective and unmarketable. The title to the property not having been perfected within the time provided for by the contract, plaintiff elected, for this and other alleged defects therein, to rescind the contract and reclaim the money paid when the contract was entered into. The defendant refused to pay over the money, on the theory that the title to the land was perfect, and plaintiff brought this action to recover the same.

The action was tried below without a jury, and upon full findings of fact judgment was ordered for plaintiff. Defendant appealed from an order denying a new trial.

The contract by its terms terminated at the expiration of the time within which the Fees were to tender a valid title to the land. Mackay v. Ames, 31 Minn. 103, 16 N. W. 541; Schwab v. Baremore, 95 Minn. 295, 104 N. W. 10. It also required of the Fees the tender of a marketable title, and we have only to determine whether such a title was tendered. Several objections were made by plaintiff to the title as disclosed by the abstract, the most prominent of which is indicated by the foregoing statement of facts. That defect involves the question whether the failure of the guardian to execute and file the sale bond as required by the statutes of North Dakota rendered the guardian's sale invalid, or, in any event, the title unmarketable. We come directly to that question.

The question whether the failure of a guardian to give the sale bond in cases of this character avoids the sale is one upon which the courts of the several states are not agreed. In this state the failure is held to render the sale void and of no effect. The same rule prevails in other states having similar statutory provisions. Babcock v. Cobb, 11 Minn. 247 (347); 1 Notes to Minn. Cases, 405, and citations there made.

The North Dakota statutes differ somewhat from those of this state; the chief difference being the absence there of the express provisions found in our statutes to the effect that a guardian's sale shall

not be set aside if it shall appear, among other things, that the sale bond was given. Under special provisions of this kind it is held that if the bond is not given the sale may be set aside, even in a collateral action. Such provisions are not found in the North Dakota Code. But in states where the statutes are substantially the same as in North Dakota it has been held that the failure to give the required bond avoids the sale. Rucker v. Dyer, 44 Miss. 591; Hamilton v. Lockhart, 41 Miss. 460; Barnett v. Bull, 81 Ky. 127; William v. Morton, 38 Me. 47, 61 Am. Dec. 229; 21 Cyc. 132, and cases there cited.

Again, in California and Montana, under statutes like those of North Dakota, the failure is treated as an irregularity, and not fatal to the sale. Hughes v. Goodale, 26 Mont. 93, 66 Pac. 702, 91 Am. St. 410; Scarf v. Aldrich, 97 Cal. 360, 32 Pac. 324, 33 Am. St. 190. The Supreme Court of North Dakota has never passed upon the question, and whether, when it is presented, the court will adopt the rule of the California and Montana courts, or that applied by other states having the same, or substantially the same statutes, can only be a matter of speculation or conjecture. We were persuaded by counsel's oral presentation of the case that in all probability the North Dakota court will adopt the rule of the Montana and California courts. But from this it does not follow that a marketable title to the land in question was tendered plaintiff by the Fees.

The term "marketable title," as applied to real property, has, though variously defined by text writers and courts, a well-defined and well-understood meaning. It is applied alike by substantially all the courts, and for the primary purpose of protecting the vendee in executory contracts for the sale of land from the burden of litigation which may be necessary to remove apparent or real defects in the title. Austin v. Barnum, 52 Minn. 136, 53 N. W. 1132; Hedderly v. Johnson, 42 Minn. 443, 44 N. W. 527, 18 Am. St. 521; Howe v. Coates, 97 Minn. 385, 107 N. W. 397, 4 L.R.A.(N.S.) 1170, 114 Am. St. 723. The subject was fully considered by Mr. Justice Elliott in the last case cited, and practically all the authori-

ties upon the question were cited in the opinion rendered therein. A marketable title, as there defined, is one that is free from reasonable doubt; one that a prudent person, with full knowledge of all the facts, would be willing to accept. A title that may involve the purchaser in litigation to remove apparent or real defects appearing upon the face of the record is not one which the vendee will be compelled to accept. The question is, not whether a court would on the facts disclosed adjudge the title good, but whether, without the aid of a specific decision, the title is so far free from doubt that a reasonable person, acting in good faith, would accept it. The question must be considered from the standpoint of the intending purchaser, and not from the viewpoint of the court.

In the light of the authorities we have no particular difficulty in holding that plaintiff was justified in rejecting the title in question as not marketable—as one that might involve him in litigation to determine the legal effect of the failure of the guardian to give the sale bond. The decisions of the courts where the question has been passed upon are at variance, the Supreme Court of North Dakota has not spoken upon the subject, and plaintiff could not be required to anticipate a favorable decision of that tribunal, nor by accepting the title resolve the doubt in favor of the vendor.

Our conclusions, therefore, are in harmony with those of the learned trial court, and the order appealed from is affirmed.

HOLT, J., having tried the case below, took no part.

PHILIP E. BROWN, J., being absent on account of illness, took no part.