**Fred C. LUCAS, Appellant,**

v.

**INDEPENDENT SCHOOL DISTRICT NO. 284, Respondent.**

No. C7–87–1914.

Court of Appeals of Minnesota.

Feb. 23, 1988.
Review Granted April 27, 1988.

Robert E. Boyle, Andrew J. Mitchell, Sharon L. Brenna, Larkin, Hoffman, Daly & Lindgren, Ltd., Bloomington, Kenneth G. Schivone, St. Paul, for appellant.

John H. Hinderaker, A. Paul Singh, Minneapolis, for respondent.

Heard, considered and decided by RANDALL, P.J., and LANSING and MULALLY *, JJ.

## OPINION

RANDALL, Judge.

Independent School District 284, as seller, and Fred C. Lucas, as buyer, executed a contract for deed contingent on marketable title. Respondent furnished appellant with an abstract on the property, and within ten business days appellant's attorney issued a title opinion alleging unmarketable title. Respondent denied that title was unmarketable and attempted to negotiate a resolution. Appellant resisted all attempts at settlement and finally brought suit for rescission of the contract for deed. Respondent denied appellant's claim and counterclaimed for an unpaid installment. On cross motions for summary judgment, the trial court denied appellant's motion for rescission, granted respondent's motion for the unpaid installment, and enforced the contract as written. We affirm.

## FACTS

On November 6, 1985, the parties executed a contract for deed, in which respondent (ISD 284) sold appellant (Lucas) certain property known as the Beacon Heights School. Because appellant wanted to close prior to the completion of his attorney's title examination, the following provision was inserted in the contract:

As of the date of execution of the Contract for Deed, Purchaser has not had an opportunity to examine the title to the Property. Seller will, at its expense, promptly have an abstract or a registered property abstract to the Property prepared and furnish such an abstract to Purchaser * * *. Purchaser shall be allowed 10 business days after receipt for examination of title and making any objections, which shall be made in writing or deemed waived. If any objection is so made, Seller shall be allowed 120 days to make title marketable. In the event Seller is unable to correct title objections *which render the title unmarketable*, Purchaser may, at Purchaser's option, terminate this Purchase Agreement in which event all monies paid by Purchaser to Seller, including interest paid by Purchaser to Seller, shall be returned by Seller to Purchaser and this Agreement shall be null and void.

(Emphasis added.) Appellant made a downpayment of $50,000.00, and began payments on January 1, 1986, in installments of $3,380.42 per month.

Respondent furnished appellant an abstract of the property on March 27, 1986. Within ten business days, appellant's attorney issued a title opinion declaring the title

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

unmarketable. The abstract showed that one of the parcels was vested in School District No. 95, and stopped there. The title examiner suspected that ISD 284 was the successor to School District No. 95, but that did not appear of record. At this point, respondent had provided no evidence to establish the relationship, if any, between the districts.

During the 120 days following appellant's written title objection there was no contact between the parties. On September 11, 1986, appellant demanded rescission of the contract and tendered possession of the premises. Respondent resisted appellant's attempt to rescind the contract. Respondent took the position that title was marketable, and during negotiations offered appellant title insurance and a title registration as inducement for appellant to keep the property. Appellant turned down these offers and continued to assert a legal right to rescind and void the contract for deed.

In October 1986 respondent notified appellant that School District No. 95 was dissolved in 1946 and ownership transferred to School District No. 144, respondent's predecessor in interest. The records pertaining to the 1946 dissolution and property transfer had been filed back then at the Hennepin County auditor's office. In 1957 the name of School District No. 144 was changed to School District No. 284.

On December 3, 1986, Title Insurance Company of Minnesota issued a commitment for an owner's policy of title insurance on the property. The policy would cover appellant as fee owner of the property, free of any title restrictions. An accompanying letter stated that appellant would have the ability to sell, finance or otherwise deal with the land. Appellant rejected the owner's policy, again tendered possession of the property to respondent, and requested a refund of all payments made. Respondent refused the tender and appellant discontinued making payments on the contract.

The parties brought cross-motions for summary judgment on March 13, 1987. On March 20, 1987, respondent filed the auditor's records in the county recorder's office. The trial court issued an order denying appellant's motion, granting respondent's motion, and ordering appellant pay $3,380.42 for the December 1986 installment. After appellant's motion for amended findings was denied, appellant unsuccessfully moved for a reconsideration. This appeal followed.

## ISSUE

Did the trial court err by granting respondent summary judgment, the effect of which was to declare title to the property marketable and require appellant to legally fulfill the contract.

## ANALYSIS

Summary judgment will be granted if there is no genuine issue as to any material fact, and either party is entitled to judgment as a matter of law. Minn.R.Civ.P. 56.03. On review of a grant of summary judgment, this court must determine whether there are any genuine issues of fact to be litigated and whether the trial court erred in its application of the law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979).

Appellant argues that the trial court erred in ruling that the contract for deed called for "marketable title," rather than "marketable title of record." Marketable title of record requires marketability to appear on the face of the abstract, or at least of record. *Howe v. Coates*, 97 Minn. 385, 395, 107 N.W. 397, 401 (1906). Appellant argues there was nothing to suggest that he was obligated to acquire information on the status of the title by any other means than the abstract. Appellant claims, therefore, that if the "gap" in the title was cured by the recorded documents in the county auditor's office, he still has the right to rescind because those documents were not formally brought to his attention during the 120 day period.[1]

1. Appellant does not concede that the claimed gap in the chain of title, which he argues rendered title unmarketable, is necessarily cured by the documents in the Hennepin County audi-

The trial court found that the contract required the conveyance of marketable title, and not "perfect abstract title." Marketable title is defined as:

> one that is free from reasonable doubt; one that a prudent person, with full knowledge of all the facts, would be willing to accept. * * *. The question is, not whether a court would on the facts disclosed adjudge the title good, but whether, without the aid of a specific decision, the title is so far free from doubt that a reasonable person, acting in good faith, would accept it. The question must be considered from the standpoint of the intending purchaser, and not from the viewpoint of the court.

*Hubachek v. Maxbass Security Bank*, 117 Minn. 163, 169, 134 N.W. 640, 642 (1912).

Appellant claims that even if only marketable title, shown on or outside the abstract, was required, respondent failed to provide any evidence, extrinsic or otherwise, during the 120 day period called for by the contract to cure the gap in the chain of title. Appellant argues that the fact respondent did not record the school district's documents of dissolution and transfer in the county recorder's office until March 20, 1987, shows that a genuine issue of fact exists as to whether title was "free from doubt" when appellant issued its title opinion.

Respondent concedes it failed to respond to appellant's title objections within the contractual time limit of 120 days. Respondent argues, however, that since title was "marketable" during the 120 day period, appellant's timely objections did not invalidate the contract for deed. Respondent points out that the documents which closed the claimed gap had been properly recorded since 1946 in the county auditor's office and, therefore, all statutory requirements for filing a school resolution of dissolution and all requirements for distributing school district property had been satisfied prior to appellant's title opinion.[2]

The trial court found that at the time of the execution of the contract for deed and the examination of title, appellant had constructive notice (appellant concedes that it surmised or "guessed" that the claimed gap was explainable through a simple renumbering of the same school district) that respondent was the successor to School District 95 and fee owner of the property.

In the trial court's memorandum accompanying the order denying appellant's motion to consider respondent's grant of summary judgment, the trial court stated in pertinent part:

> The dissolution of School District No. 95 and the subsequent attachment of all real and personal property owned by the dissolved district to Independent School District No. 144 was accomplished pursuant to the appropriate statutory requirement in force at the time. It was, at all times relevant, a matter of public record, and consequently is legally sufficient to constitute constructive notice.

The trial court memorandum further stated, and it is undisputed by appellant, that

> [o]n December 3, 1986, Title Insurance Company of Minnesota issued a commitment for an owner's policy of title insurance covering the subject property, showing defendant [ISD 284] as fee owner of all of the property. No exceptions to coverage are found in the commitment

tor's office which came to light during the negotiations. At one point, appellant took the position that, even if they existed, they were not capable of being recorded. Respondent did, in fact, record those documents with the Hennepin County recorder's office in March 1987. Respondent claims that it recorded the documents, not to clear up an existing gap, but simply to refute appellant's contention that the documents could not be controlling as they were not capable of being recorded.

2. Minn.Stat. § 122.17 (1945) in effect in 1946, called for the documents in question to be recorded at the county auditor's office. Minn. Stat. § 122.17, *Repealed by* 1957 Minn.Laws Ch. 947, art. 9, § 9. Even though the dissolution and transfer of a school district's property almost always involved real estate in addition to personal property, there apparently was no legislative mandate that the dissolution and transfer documents be simultaneously recorded in the old register of deeds or county recorder's office, which is the normal place of filing documents affecting title to real estate.

which relate in any manner to the objections raised * * *.

In essence, appellant's position is that, even though the title is marketable, he can void the contract because it was "unmarketable" as to his perception during the 120 day period the parties contractually allotted " * * * to make title marketable." Respondent's position, in essence, is that title always was marketable, and that nothing that happened or did not happen during the 120 days affected the status of the property. We agree with respondent the documents at the time of the 1946 dissolution had been properly filed pursuant to the statute. Although respondent concedes that it would have been better if the documents necessary to explain the renumbering of the school district had been brought to appellant's attention within the literal 120 days (September 11th was approximately the 150th day), no real prejudice was ever shown by appellant who received the marketable fee title he had bargained for. We hold that the trial court properly found respondent's inaction during the 120 day period did not affect marketability of title to the point rescission was justified.

## DECISION

The trial court's grant of summary judgment for respondent, and its finding that appellant received the marketable title he bargained for, was proper.

Affirmed.