Fred C. LUCAS, Petitioner, Appellant,

v.

**INDEPENDENT SCHOOL DISTRICT NO. 284, Respondent.**

**No. C7–87–1914.**

Supreme Court of Minnesota.

Dec. 16, 1988.

Kenneth G. Schivone, St. Paul, for appellant.

John H. Hinderaker, Paul W. Heiring, Bloomington, for respondent.

## OPINION

COYNE, Justice.

This case comes to us on review of a decision of the court of appeals affirming summary judgment in favor of defendant Independent School District No. 284 (District 284). Plaintiff, the purchaser of real property pursuant to a contract for deed, challenges the ruling that the contract re-

quired nothing of the contract vendor save delivery of an abstract of title and the ability to demonstrate marketable title in the vendor. We reverse and remand.

In November 1985, plaintiff Fred Lucas entered into an agreement with the defendant District 284 for the purchase of the Beacon Heights school property. The land comprises two lots, Subparcel A on which the school building is situated, and a smaller piece called Subparcel B. Subparcel B is registered property; Subparcel A, the subject of the dispute between the parties, is abstract property.

To accommodate the school district, plaintiff entered into a contract for deed without first examining the title to the property. The contract required District 284 to provide an abstract of title and gave the plaintiff 10 days after receipt of the abstract to raise title objections. If the plaintiff failed to object timely, the objection was to be deemed waived. In the event of any objection, District 284 was to "be allowed 120 days to make title marketable." If District 284 should be "unable to correct title objections which render the title unmarketable," the plaintiff could terminate the contract and recover all sums, including interest, paid pursuant to the contract. The contract for deed was executed on November 6, 1985, with plaintiff then making a $50,000 down payment. In January 1986 plaintiff began paying monthly installments of $3,380.42. Four months after execution of the contract, on March 27, 1986, District 284 delivered an abstract of title to Subparcel A, certified to February 27, 1986.[1]

Based on his office examination of the abstract, made at plaintiff's request, attorney Julian Zweber prepared a title opinion letter, a copy of which was timely sent to District 284. In his letter Mr. Zweber expressed the opinion that record fee title to Subparcel A was vested in School District No. 95 and that the abstract did not disclose the relationship, if any, of District 95

to District 284. Mr. Zweber prescribed specific curative action on the part of District 284: "The seller should provide satisfactory evidence to establish that Independent School District No. 284 is the successor of School District No. 95, and/or has acquired all of District 95's interest in Subparcel A." Other objections no longer in issue were also raised. The letter concluded with these words:

> Based on the foregoing, in my opinion title to the main parcel is not marketable at this time, and this letter should be considered formal objection to title as contemplated by the terms of the Contract for Deed between the parties dated November 6, 1986 [sic].

The 120 days allowed the school district to make title marketable ran without any attempt by District 284 to cure the alleged title defect or even to discuss the objection to title. At some time after expiration of the 120 day period, District 284 proposed registration of Subparcel A. On September 11, 1986, approximately one month after expiration of the 120 day period, plaintiff rejected the offer to register title and demanded rescission of the contract and refund of all sums paid pursuant thereto. At the same time plaintiff tendered possession of the premises.

District 284 did not accept plaintiff's rescission and tender, and on October 24, 1986, 199 days after plaintiff's objection to title, the school district produced copies of a resolution of the Board of County Commissioners of Hennepin County dissolving School District No. 95 and of a resolution and order of the Board attaching the territory comprising District 95 to Independent School District No. 144 and assigning, transferring, and awarding to District 144 the real estate belonging to District 95. The resolutions and a conformed, unsigned copy of the order, all dated June 17, 1946, were filed in the office of the Hennepin County Auditor on or before June 20, 1946.[2]

---

1. Apparently, a registered property abstract covering Subparcel B was delivered contemporaneously. Title to Subparcel B, however, is not at issue in this proceeding.

2. The order of the Commissioner of Education renumbering District 144 to District 284, pursuant to Laws 1957, ch. 947 was recorded in the

In November 1986 District 284 offered to furnish an owner's title policy showing marketable title in the school district and then to proceed to register title to the property. Plaintiff rejected the proposal on December 11th, again tendered immediate possession of the property, and requested refund of all plaintiff's payments on the contract. Plaintiff then commenced this suit for rescission and reimbursement of all payments pursuant to the contract. District 284 denied that title was unmarketable and interposed a counterclaim for the December 1986 installment, the only delinquent monthly payment.

On March 18, 1987—five days after the hearing on cross-motions for summary judgment—District 284 recorded certified copies of the 1946 resolutions and order dissolving District 95, attaching its territory to District 144, and transferring its property to District 144 in the office of the Hennepin County Recorder. By affidavit District 284 advised the district court of the recordation, and plaintiff countered with Mr. Zweber's affidavit questioning the propriety of recording a certified copy of a conformed unsigned copy.

Concluding that District 284 held marketable title to the property which is the subject of the contract for deed and that plaintiff was charged with constructive knowledge of documents filed in the office of the county auditor, the district court ordered summary judgment in favor of District 284. Contending that the contract required marketable title of record, plaintiff appealed from the resulting judgment, and the court of appeals affirmed. *Lucas v. Independent School Dist. No. 284*, 419 N.W.2d 641 (Minn.App.1988).

The dispute centers on the following provision contained in the addendum to the contract for deed:

As of the date of execution of the Contract for Deed, Purchaser [Lucas] has not had an opportunity to examine the title to the Property. Seller [District 284] will, at its expense, promptly have an abstract or a registered property abstract to the Property prepared and fur- nish such an abstract to Purchaser or Purchaser's attorney. Purchaser shall be allowed 10 business days after receipt for examination of title and making any objections, which shall be made in writing or deemed waived. If any objection is so made, Seller shall be allowed 120 days to make title marketable. In the event Seller is unable to correct title objections which render the title unmarketable, Purchaser may, at Purchaser's option, terminate this Purchase Agreement in which event all monies paid by Purchaser to Seller, including interest paid by Purchaser to Seller, shall be returned by Seller to Purchaser and this Agreement shall be null and void.

Plaintiff contends that the requirement that District 284 furnish an abstract to the property incorporates a requirement that it possess marketable title of record. The school district, on the other hand, asserts that since the contract does not explicitly require marketable title of record, it need merely hold title which can be shown to be marketable. It seems to us that both parties claim too much.

■ The distinction between marketable title and marketable title of record rests on the location of documents evidencing title. A purchaser entitled to marketable title of record need look only to documents recorded in the office of the county recorder to establish title. A purchaser entitled simply to marketable title, however, can require only that title be established beyond a reasonable doubt whether that be accomplished by recorded documents or by material outside the recording system. 1 R. Patton & C. Patton, *Patton on Land Titles* § 46, at 156–59 (2d ed. 1957).

■ Certainly, if it is clear from the contract that record title was contemplated, the purchaser is entitled to demand marketable title of record. *See Hubachek v. Maxbass Sec. Bank*, 117 Minn. 163, 168–69, 134 N.W. 640, 642 (1912) (contract required title perfect of record); *Howe v. Coates*, 97 Minn. 385, 393–94, 107 N.W. 397, 401 (1906) (buyer entitled to rescind if record title

office of the Register of Deeds for Hennepin County on January 29, 1960.

unmerchantable). *See also McChesney v. Oppek,* 156 Minn. 260, 262–63, 194 N.W. 882, 883 (1923) (vendor required to "furnish merchantable abstract of title"); *Knudson v. Trebesch,* 152 Minn. 6, 7, 187 N.W. 613, 614 (1922) (vendor obligated to furnish abstract showing a good merchantable title). It has long been recognized that the object of an abstract is to enable the purchaser to determine the validity and marketability of the title; to enable purchaser's counsel to resolve every reasonable inquiry, it should contain everything material concerning the sources and condition of the title. *Fagan v. Hook,* 134 Iowa 381, 384–86, 105 N.W. 155, 157 (1905). 1 R. Patton & C. Patton, *supra,* § 43, at 140. Accordingly, absent specific reference to record title, we have held that if a contract requires the seller to furnish an abstract of title, the marketability of the title is to be tested by the record as shown by the abstract; the purchaser is not obliged to examine further or elsewhere. *Buswell v. O.W. Kerr Co.,* 112 Minn. 388, 393, 128 N.W. 459, 461 (1910); *Horn v. Butler,* 39 Minn. 515, 517, 40 N.W. 833, 834 (1888).

■ This contract required the seller to furnish an abstract of title, allowed the buyer 10 days to make objection to title, then allowed the seller 120 days to make title marketable. We are of the opinion that implicit in the requirement that the seller furnish an abstract of title is the representation that the abstract is proffered to demonstrate the marketability of the seller's title. The buyer, in reliance on that representation, is entitled to confine the title search to the abstract and need not examine further or elsewhere before raising objections to the title. We hold, therefore, that timely objection based solely on examination of the abstract invokes the seller's obligation to make title marketable within the contractual time frame.

■ The trial court ruled that District 284 had marketable title at all times material to the contract, and that plaintiff was charged with constructive notice of the dis-

solution of District 95 and the attachment of its territory and transfer of its property to District 144 documented in the office of the Hennepin County Auditor. That District 284 may have in fact possessed fee title to the property and the capability to prove its title to be marketable does not, however, fulfill its contractual undertaking. To borrow from Pollock's oft-quoted phrase, "marketability in the air, so to speak, will not do." [3] Marketability must be demonstrated. Whether a title is marketable—i.e., a title that is free from reasonable doubt—must be tested from the prospective purchaser's standpoint, and not from the viewpoint either of the seller or of the court. *Hubachek v. Maxbass Sec. Bank,* 117 Minn. 163, 169, 134 N.W. 640, 642 (1912). Unquestionably, the abstract on which the purchaser based his objection did not show that District 284 had marketable title to subparcel A. While the abstract revealed the relationship between District 144 and District 284, it did not disclose any connection between District 95 and either District 144 or District 284. Absent evidence that District 284 had succeeded to District 95's interest in the property no reasonably prudent buyer could be compelled to accept the title. *Cf. Hedderly v. Johnson,* 42 Minn. 443, 444–45, 44 N.W. 527, 528 (1890) (availability of evidence to vendee of validity of title affects marketability).

Nor was plaintiff chargeable with constructive notice of the resolutions and order dissolving District 95 and attaching its territory and transferring its property to District 144 recorded in the county auditor's office. It has long been established that the auditor's records do not afford constructive notice to a purchaser of an interest in land. *Roussain v. Norton,* 53 Minn. 560, 564, 55 N.W. 747, 748 (1893); *Township of Sterling v. Griffin,* 309 Minn. 230, 234, 244 N.W.2d 129, 132 (1976). We recognize that the statutory procedure for dissolution of a school district and attachment of its territory requires filing of the

---

**3.** "[N]egligence in the air, so to speak, will not do." P. Landon, *Pollock's Law of Torts* 361    (14th ed. 1939).

resolution and order of dissolution, attachment and transfer with the county auditor [4] but makes no provision for recordation in the office of the county recorder, while the statutory procedure for assigning identification numbers expressly permits recordation of a certified copy of the order in the office of the county recorder to show the new legal name of the district.[5] Filing documentation of dissolution, attachment and transfer with the county auditor is necessitated by the auditor's duties in his capacity as clerk of the county board and with respect to the tax liability of property affected by the attachment of the territory of the dissolved district to another school district. Minn.Stat. §§ 384.09 & 275.08, subd. 1 (1986). Filing the order transferring and assigning the property of a dissolved school district to another school district does not, however, meet the requirements of Minn.Stat. § 507.34 or § 508.24 (1986) for the recording or filing of conveyances. And the order of June 17, 1946 by which the real estate belonging to District 95 was "assigned, transferred, and awarded" to District 144 is surely a conveyance. Minn.Stat. § 507.01 (1986).

Although it now appears that District 284 could have produced evidence of the transfer of the property of District 95 to District 144, subsequently renumbered 284, within the time allowed by the contract, it did not do so. Indeed, the school district made no attempt even to address plaintiff's objection during the 120 day period allowed by the contract. Therefore, following expiration of the allotted time, plaintiff had the right, at his option, to terminate the contract and have refunded all monies, including interest, paid pursuant to the contract. Although the fact that plaintiff tried to rescind the contract appears to be uncontroverted, the effectiveness of the attempted rescission is sharply disputed; the school district contends that the plaintiff waived his right to rescind or that he is estopped from doing so. Because the trial court had determined that plaintiff did not have any right to terminate the contract, the effectiveness of plaintiff's attempted rescission is yet at issue. We remand for resolution of this question.

REVERSED AND REMANDED.

---

4. Minn.Stat. § 122.29 (1945) has since been repealed. *See* Act of Apr. 29, 1957, ch. 947, art. IX, § 9, 1957 Minn.Laws 1621, 1702. Similar provisions are now found at Minn.Stat. § 122.22 (1986 & Supp.1987).

5. Minn.Stat. § 122.03, subd. 2 (1986).