**HERSH PROPERTIES, LLC,**
**petitioner, Appellant,**

v.

**McDONALD'S CORPORATION,**
**et al., Respondents.**

No. C9–97–992.

Supreme Court of Minnesota.

Feb. 4, 1999.

Fabyanske, Westra & Hart, P.A., Gary C. Eidson, Jocelyn L. Knoll, Minneapolis, for appellant.

Winthrop & Weinstine, P.A., Eric J. Nystrom, Philip R. Mahowald, St. Paul, for respondents.

Leonard, Street and Deinard, Joseph M. Finley, Bradly J. Gunn, Minneapolis, for amicus curiae Minnesota Land Title Association.

## OPINION

PAUL H. ANDERSON, Justice.

In 1950, the predecessor in title to a Torrens parcel of real property, now occupied by Dinkytown Wine & Spirits, reserved an appurtenant easement for ingress and egress and signage over an abutting Torrens parcel of real property. The abutting Torrens parcel is currently occupied by a McDonald's restaurant. Certificates of title to both parcels contain a recital of the easement. Today, almost a half-century after its creation, there is no evidence that this easement has ever been utilized, and the area encompassing the easement is being used by McDonald's as a parking lot. Appellant Hersh Properties, the owner of Dinkytown Wine & Spirits, is now attempting to utilize the easement to erect a sign advertising liquor. However, respondents McDonald's Corporation and Choate & Company, Inc., the McDonald's restaurant franchisee, assert that the Minnesota Marketable Title Act (MTA) extinguished the easement.

Hersh brought a declaratory judgment action in district court seeking a determination of the validity of its claimed easement. The

court granted summary judgment in favor of McDonald's and Choate on the grounds that the MTA terminated Hersh's claimed easement. The Minnesota Court of Appeals affirmed, concluding that the MTA is applicable to Torrens property and that, under the MTA, Hersh's easement was extinguished because the recital of the easement on the Torrens certificates of title did not satisfy the MTA notice requirements. We affirm the court of appeals' conclusion that the MTA is applicable to Torrens property, but we reverse the court of appeals' conclusion that the easement was extinguished because the MTA notice requirements were not satisfied.

McDonald's is the fee owner of a Torrens parcel of real property (McDonald's Parcel) located at 407 15th Avenue Southeast in Minneapolis, Minnesota. Choate operates a McDonald's restaurant on this parcel. Hersh is the fee owner of a Torrens parcel of real property (Hersh Parcel) located at 1412 5th Avenue Southeast, which is adjacent to the McDonald's Parcel. The certificates of title for both the McDonald's Parcel and the Hersh Parcel expressly recite the existence of an ingress and egress and signage easement. The disputed easement was created by an August 1, 1950 conveyance.

Prior to 1950, Arthur and Doris Robinson owned both the Hersh Parcel and the McDonald's Parcel in fee simple. In 1925, the Robinsons registered title to their undivided property under the Torrens Act. In 1944, the Robinsons divided their property into two parcels and registered them separately, but retained ownership of both until 1950. Since 1950, the Hersh Parcel has been sold three times while the McDonald's Parcel has been sold once.

The Hersh Parcel was first sold on August 1, 1950, when the Robinsons conveyed it by warranty deed to a corporation. In the deed, the Robinsons granted the new corporate owners an easement over the remaining parcel, what is now known as the McDonald's Parcel. The deed provided for, among other things, the following easement (hereinafter referred to as the signage easement):

> for ingress and egress * * * over the Northeasterly 15 feet of the southwesterly 65 feet of Lot One (1), said Block O, and together with the right to maintain a sign upon the 15 foot easement strip last referred to at the point where it connects with Fifteenth Avenue Southeast.

After the deed to the Hersh Parcel was recorded, the Hennepin County Registrar of Titles issued a residue certificate of title to the Robinsons for the remaining property, the McDonald's Parcel. The Robinsons' residue certificate of title contained a recital that the McDonald's Parcel was subject to, among other things, the signage easement.

The second conveyance of the Hersh Parcel occurred over a decade later, on March 18, 1964, when the parcel was conveyed by warranty deed to a new owner. The final conveyance of the Hersh Parcel occurred on June 27, 1995, when the parcel was conveyed to Hersh by warranty deed. The legal description of the Hersh Parcel in each of these conveyances expressly provided that title to the parcel is benefited by the signage easement.

The only sale of the McDonald's Parcel occurred on November 5, 1984, when McDonald's acquired a fee simple interest in its parcel under a personal representative's deed from the estate of Doris Robinson. The certificate of title issued to McDonald's as a result of this transfer expressly provided that title to the McDonald's Parcel is burdened by the signage easement.

In the fall of 1995, Hersh informed McDonald's and Choate that it intended to place a sign advertising liquor within the area of its claimed signage easement. The area encompassing the easement has since been paved and McDonald's is using it as a parking lot. McDonald's and Choate responded by challenging the validity of the easement and stating that they would oppose any attempted exercise of the easement.

Hersh then brought a declaratory judgment action in Hennepin County District Court to determine the validity of the signage easement. As an affirmative defense to Hersh's action, McDonald's and Choate asserted that the MTA extinguished Hersh's claim. McDonald's argued that the easement was extinguished because, following the grant of the easement by the Robinsons in

the 1950 warranty deed, neither Hersh nor its predecessors in title filed a sworn notice as required by the MTA. More particularly, McDonald's pointed to the fact that neither Hersh nor its predecessors in title filed, within 40 years of the creation of the easement, a sworn notice with the county recorder or registrar of titles setting forth the name of the claimant, a description of the real estate affected, and the instrument on which the claim is founded. Because no such notice was filed, McDonald's asserts that under the MTA the easement was presumed abandoned and, therefore, extinguished. McDonald's also argued that because there was no evidence that the easement had ever been used, the easement was also extinguished by common law abandonment.

Hersh did not dispute that it failed to comply with the explicit notice requirements of the MTA. Rather, Hersh argued that the MTA notice requirements were constructively satisfied because the recital of the signage easement was contained in the conveyance of the McDonald's Parcel in 1984 and the conveyances of the Hersh Parcel in 1964 and 1995. Hersh claimed that under the Torrens system, the certificates of title conclusively showed that the easement existed and was, therefore, valid.

On cross-motions for summary judgment, the district court granted summary judgment in favor of McDonald's and Choate on the grounds that Hersh abandoned its interest in the signage easement as evidenced by its failure to record its interest in the property within 40 years of the date the easement was created. The court first determined that the MTA was applicable to Torrens property and that, while a certificate of title is conclusive evidence of everything contained in it, when the source of the title has been of record at least 40 years, a sworn notice has to be filed with the registrar of titles. The court found that the source of the easement was the August 1, 1950 Robinson conveyance, which had been of record at least 40 years. In addition, the court determined that the presumption of abandonment was present because Hersh failed to record any notice of its interest in the property within 40 years from the date the easement was created. The

court then found that there was no indication that Hersh was in possession of the signage easement because the record was devoid of evidence that any sign had ever been placed on the easement by Hersh or any prior owner. Based on these findings, the court concluded that under the provisions of the MTA the easement was presumed abandoned and, therefore, terminated. The court did not address the issue of common law abandonment on the grounds that the MTA was dispositive of the issue.

Hersh appealed to the court of appeals, arguing that the district court erroneously determined that because the access and signage easement was created on August 1, 1950, this date controlled for purposes of triggering the MTA's 40-year limitation period. Hersh argued that the MTA did not apply to the facts in this case because Hersh acquired its interest in the signage easement when it purchased its parcel in June 1995. Specifically, Hersh asserted that, under the MTA, the date on which it purchased its parcel is critical and the date of the "source of title" for the easement is irrelevant. Hersh also argued that the court erroneously determined that the MTA notice requirements were not satisfied and asserted that sufficient notice of the easement was recorded in the parties' respective certificates of title.

In response, McDonald's argued that it was entitled to invoke the MTA as a defense to Hersh's claimed right to utilize the signage easement. First, McDonald's asserted that, although it only had its "claim of title" for 13 years, the "source of title" is derived from the 1950 Robinson deed. More specifically, McDonald's argued that because its "claim of title" was based on a "source of title" that is over 40 years old, the MTA is available as a defense to Hersh's claimed right to the easement. Second, McDonald's argued that the MTA extinguished the easement because Hersh's predecessors in title failed to follow the explicit MTA notice requirements. Specifically, McDonald's argued that the MTA does not recognize constructive notice as a method of preserving an interest in real property.

The court of appeals affirmed the district court. In making its determination, the

court of appeals held first that the MTA is applicable to Torrens property, and second, the MTA extinguished the signage easement because the recital of the easement on the certificates of title did not satisfy the explicit MTA notice requirements. In making its determination, the court stated that the party invoking the MTA must have "a claim of title based upon a source of title, which source has then been of record at least 40 years" and "[t]he party against whom the MTA is invoked must have an interest founded on an instrument executed more than 40 years before an action to enforce that interest is commenced." *Hersh Properties, LLC v. McDonald's Corp.*, 573 N.W.2d 386, 391 (Minn.App.1998) (citations omitted).

The court of appeals went on to hold that McDonald's source of title was the 1950 conveyance that created the signage easement. The court then distinguished between a "claim of title" and a "source of title." The court reasoned that the "age of the *claim of title* for the party invoking the MTA is immaterial so long as that claim is based on a *source of title* more than 40 years old." *Id.* (emphasis in original). The court stated that "McDonald's acquired its claim of title in 1984 when it purchased the McDonald's parcel, the source of title to which was the 1950 conveyance that has been of record for more than 40 years." *Id.* The court went on to conclude that McDonald's was able to invoke the MTA as a defense against the Hersh easement because McDonald's had an adequate source of title. *Id.*

In Hersh's present appeal, it is undisputed that following the grant of the signage easement by the Robinsons in the 1950 warranty deed, no owner in the chain of title to the Hersh Parcel filed a sworn notice with the county recorder or registrar of titles as required by the MTA. Further, there is no evidence that Hersh or its predecessors in title have ever used the easement. Nevertheless, Hersh asserts that the easement is still valid. Hersh argues that the MTA does not apply to bar its right to enforce the easement because McDonald's does not have the requisite "source of title" to invoke the MTA. Hersh challenges the court of appeals' interpretation and application of "claim of

title" and "source of title" as they co-exist in Minn.Stat. § 541.023, subd. 1 (1998).

## I.

The facts of this case present an important question, considered for the first time by this court. We must determine whether an owner of Torrens property, whose certificate of title is less than 40 years old, may invoke the MTA to extinguish a signage easement that is expressly recited as an encumbrance on such owner's certificate of title. The issue presented requires interpretation of the Minnesota Torrens Act (Torrens Act), Minn. Stat. §§ 508.01–.84 (1998), and the MTA, Minn.Stat. § 541.023, subds. 1–7 (1998).

■ Statutory construction presents a legal question, which this court reviews de novo. *Hibbing Educ. Assoc. v. Public Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn.1985). To properly address the issue raised in this appeal, we must answer the following questions: (1) whether the MTA is applicable to property that has been registered pursuant to the Minnesota Torrens Act; and if the answer to the first question is in the affirmative, then (2) whether a certificate of title constitutes a "source of title" under the MTA. We acknowledge that these questions cannot properly be answered without an understanding of the history and purpose of the Torrens Act and the MTA and, for this reason, we will discuss both.

Our system of real property conveyance is "predicated upon the assumption" that a purchaser of real property can determine whether a seller has marketable title by examining written evidence of the property's chain of title. Paul E. Basye, *Trends and Progress— The Marketable Title Acts*, 47 Iowa L.Rev. 261, 261 (1962). Accordingly, to determine the status of title, prospective purchasers of real property must examine the recorded evidence of transfers and encumbrances. With the passage of time and the inevitable lengthening of chains of title, this process understandably becomes more cumbersome and uncertain. Every time title to real property changes hands, the number of documents in a chain of title increases and the encumbrances that may constitute a defect in title increase in direct proportion. *Id.* at 264.

Thus, many title examiners feel compelled to raise any and all possible defects, even those that may be considered de minimus, when ascertaining whether title is marketable. *See id.* at 265. As a result, examination of titles becomes less efficient and the status of title becomes less certain.

The mounting difficulties associated with transferring real property and the uncertainty of title gave rise to enactment of reform measures intended to promote efficiency and certainty. *See, e.g.,* John L. McCormack, *Torrens and Recording: Land Title Assurance in the Computer Age,* 18 Wm. Mitchell L.Rev. 61, 70 (1992). In Minnesota, two such measures include the enactment of the Torrens Act of 1901 and the enactment of the current version of the MTA in 1947. The Torrens Act operates to vest conclusive title in the holder of a certificate of title issued pursuant to judicial proceedings. The MTA, on the other hand, operates to extinguish those ancient interests that interfere with the efficient and certain transfer of real property. Notwithstanding the differences of these acts, it is clear that both endeavor to promote the efficient and certain transfers of title.

### A. Torrens System

Prior to 1901, all real property in Minnesota was abstract property. Under the abstract system, documents evidencing marketable title may be found in recorded documents or by material outside the recording system. *See Lucas v. Indep. School Dist. No. 284,* 433 N.W.2d 94, 96 (Minn.1988). Generally, the prospective purchaser of real property looks at recorded documents to determine marketable title of record. *Id.* at 97. These documents consist of written evidence of transactions that affect the real property and are recorded with the county recorder in the particular county where the property is located. The recorded documents then become public records and operate as an instrument of conveyance as well as a means to appraise title. Typically, a summary of the material parts of these recorded or filed documents—an abstract of title—is prepared to provide a prospective purchaser or mortgagor with a simplified and convenient method to ascertain marketability of title. *See id.* at 97.

In 1901, Minnesota adopted the Torrens system. Act of Apr. 11, 1901, ch. 237, §§ 1–98, 1901 Minn. Laws 348, 348–378, *codified at* R.L. § 3370–403 (1905). The purpose of the Torrens system was to create a title registration procedure intended to simplify conveyancing by eliminating the need to examine extensive abstracts of title by issuance of a single certificate of title, free from "any and all rights or claims not registered with the registrar of titles * * *." *In re Juran,* 178 Minn. 55, 58, 226 N.W. 201, 202 (1929). Torrens registration provides a means to determine the state of title through the inspection of a single document, the certificate of title, except for seven specified interests enumerated in Minn.Stat. § 508.25 (1998). *See Mill City Heating & Air Cond. Co. v. Nelson,* 351 N.W.2d 362, 364–65 (Minn.1984).

At the time the Torrens Act was adopted in Minnesota, the Torrens system had a long and established history. As early as the 1850's, Sir Robert Richard Torrens implemented the Torrens system of title registration in South Australia, "though a similar system had been in vogue" for several years in Europe. *Peters v. Duluth,* 119 Minn. 96, 98, 137 N.W. 390, 391 (1912). When Minnesota adopted the Torrens system, the goal of the legislature was "to clear up and settle land titles" and, to that end, a proceeding was authorized by which title could be settled by judicial decree. *Id.* at 103, 137 N.W. at 393. An officer of the court, the examiner of titles, oversees all stages of registration of title under the Torrens system. *See* Minn. Stat. § 508.321 (1998).

Title registration does not create or transfer a legal interest until the examiner of titles, subject to the jurisdiction of the court, makes a comprehensive assessment of the current state of title. *See* Minn.Stat. §§ 508.13 (1998), 508.16, subd. 2 (1998). Initial title registration of real property is a relatively involved proceeding that ultimately results in a certificate of title being issued, which "shall be received in evidence in all the courts of this state and be conclusive evidence of all matters and things contained in

it." Minn.Stat. § 508.36 (1998). The Torrens Act provides in relevant part that:

> Every person receiving a certificate of title pursuant to a decree of registration and every subsequent purchaser of registered land who receives a certificate of title in good faith and for a valuable consideration shall hold it free from all encumbrances and adverse claims, excepting only the estates, mortgages, liens, charges, and interests as may be noted in the last certificate of title in the office of the registrar * * *.

Minn.Stat. § 508.25 (1998).

Unlike the abstract system, where *evidences of title* are recorded, under the Torrens system there is a judicial proceeding whereby *title itself* is registered. *See Henry v. White,* 123 Minn. 182, 184, 143 N.W. 324, 325 (1913) (stating "[t]he basic principle of the [Torrens] system is the registration of the title to land instead of registering only the evidence of such title"). The conclusiveness of certificates of title is maintained by court adjudication and through statutes of limitations. *See* Minn.Stat. §§ 508.22 (1998), 508.28 (1998). Accordingly, in order to maintain the reliability of certificates of title, certain subsequent transfers of title and changes to the certificate must be made either by court order or by approval of the examiner of titles. *See, e.g.,* Minn.Stat. §§ 508.58 (1998), 508.62 (1998), 508.68 (1998). Subsequent transfers of title where the old certificate of title is cancelled and a new certificate of title is issued can only occur when the registrar of titles follows specific procedures. *See* Minn.Stat. § 508.52 (1998). No erasure, alteration, or amendment to the certificate of title can be made except by court order or by approval of the examiner of titles. *See* Minn.Stat. § 508.71, subd. 1 (1998). The conclusive nature of certificates of title allows real property owners to rely on the certificate of title while disregarding most interests not evidenced on the current certificate of title.

## B. *Marketable Title Act*

The current version of the MTA was adopted in 1947 in order to prevent "ancient records [from] fetter[ing] the marketability of real estate." Minn.Stat. § 541.023, subd. 5 (1998). The central tenet of the MTA is that a determination of title should be possible from an examination of documents in the chain of title recorded in the 40–year period preceding the search. This principle represents a marked departure from the policy and operation underlying our land transfer system. As we have previously stated, "[t]he Marketable Title Act is a comprehensive plan for reform in conveyancing procedures * * *." *Wichelman v. Messner,* 250 Minn. 88, 105, 83 N.W.2d 800, 816 (1957). The MTA provides, in relevant part, that:

> As against a claim of title based upon a source of title, which source has then been of record at least 40 years, no action affecting the possession or title of any real estate shall be commenced by a person, partnership, corporation, state, or any political division thereof, after January 1, 1948, to enforce any right, claim, interest, incumbrance or lien founded upon any instrument, event or transaction which was executed or occurred more than 40 years prior to the commencement of such action, unless within 40 years after such execution or occurrence there has been recorded in the office of the county recorder or filed in the office of the *registrar of titles* in the county in which the real estate affected is situated, a notice sworn to by the claimant or the claimant's agent or attorney setting forth the name of the claimant, a description of the real estate affected and of the instrument, event or transaction on which such claim is founded, and stating whether the right, claim, interest, incumbrance or lien is mature or immature.

Minn.Stat. § 541.023, subd. 1 (1998) (emphasis added). If a party fails to record notice of a certain interest within the 40–year statutory period, the interests not so recorded are subject to the MTA's conclusive presumption of abandonment. *See* Minn.Stat. § 541.023, subd. 5 (1998).

## C. *Applicability of the MTA to Torrens property*

Having reviewed the history and purpose of both the Torrens Act and the MTA, we now proceed to determine whether the MTA is applicable to property registered

under the Torrens system. In construing the MTA, we first must look at the specific language to determine its meaning. If a statute is free from ambiguity, we look only at its plain language. *Tuma v. Comm'r of Econ. Sec.*, 386 N.W.2d 702, 706 (Minn.1986).

■ Here, the language of the MTA clearly and unambiguously states that it applies to "any real estate." *See* Minn.Stat. § 541.023, subd. 1. While the MTA provides several exceptions to this mandate, it noticeably fails to exempt Torrens property. Further, the MTA also requires that a notice to preserve an interest within 40 years of its creation must be filed in the office of the county recorder, which handles abstract property, *or* the office of the registrar of titles, which handles Torrens property exclusively. The language that specifically provides for the recording of notice in the office of the registrar of titles would be unnecessary if the legislature did not contemplate that the MTA would be applicable to Torrens property. Consequently, the plain language of the MTA leads us to hold that the MTA applies to property registered pursuant to the Torrens Act.

## II.

■ Having determined that the MTA applies to Torrens property, we must now determine whether the MTA applies to bar Hersh's right to enforce the signage easement. The MTA essentially provides that unless an interest is preserved by filing a sworn notice within 40 years of the creation of the interest, that interest cannot be asserted against a claim of title based on a source of title that has then been of record at least 40 years. *See* Minn.Stat. § 541.023, subd. 1. Therefore, in applying the MTA, we must first determine which party is required to have the requisite "claim of title based upon a source of title." *See id.* We conclude that the proper inquiry is the age of McDonald's source of title for its property rather than the age of the source of Hersh's easement.

■ Our conclusion is supported by our most comprehensive decision addressing the MTA. *See Wichelman*, 250 Minn. at 88, 83 N.W.2d at 800. In *Wichelman*, we stated that in order for the MTA to operate in a

particular case to extinguish any interest, two requirements are necessary: (1) "the party desiring to invoke the statute for his own benefit must have a requisite 'claim of title based upon a source of title, which source has then been of record at least 40 years'"; and (2) "the person against whom the [MTA] is invoked must be one who is 'conclusively presumed to have abandoned all right, claim, interest * * *' in the property." *Wichelman*, 250 Minn. at 111, 83 N.W.2d at 819 (ellipses in original).

■ The language we used in *Wichelman* and in subsequent decisions rendered by this court makes it clear that it is McDonald's source of title that is at issue rather than Hersh's source of title. *See, e.g., United Parking Stations, Inc. v. Calvary Temple*, 257 Minn. 273, 275, 101 N.W.2d 208, 210 (1960) (analyzing the source of title of the party attempting to invoke the protection of the MTA). Here, Hersh initiated the declaratory judgment action against McDonald's and Choate, requesting the district court to determine whether the signage easement is valid. As an affirmative defense, McDonald's and Choate asserted that Hersh's claim was barred by the MTA. Because McDonald's and Choate are invoking the MTA for their own benefit, as a means to extinguish Hersh's easement, McDonald's must have the requisite "claim of title based upon a source of title, which source has then been of record at least 40 years." *Wichelman*, 250 Minn. at 111, 83 N.W.2d at 819 (citation omitted).

The next question we must answer is whether McDonald's and Choate have the requisite "claim of title based upon a source of title" to bar Hersh's ability to utilize the signage easement. A significant feature of the MTA is that it protects only those property owners whose "claim of title [is] based upon a source of title." Minn.Stat. § 541.023, subd. 1. As such, the critical issue before this court concerns the proper interpretation of "claim of title" and "source of title" as they co-exist in subdivision 1 of the MTA. It is significant that the phrase "claim of title" is not defined in the statute, but the term "source of title" is defined. When the MTA was enacted in its current form in 1947,

the MTA used the term "source of title," but failed to define it. *See* Act of Mar. 24, 1947, ch. 118, § 1, 1947 Minn. Laws 143, 143–45, *codified at* Minn.Stat. § 541.023, subd. 1 (1949). This omission was addressed in 1959 when Minn.Stat. § 541.023, subd. 7 was added to define a "source of title." *See* Act of Apr. 24, 1959, ch. 492, § 1, 1959 Minn. Laws 665, 665–66, *codified at* Minn.Stat. § 541.023, subd. 7 (1961). As defined, the source of title can be "any deed, judgment, decree, sheriff's certificate, or other instrument which transfers or confirms, or purports to transfer or confirm, a fee simple title to real estate * * *." Minn.Stat. § 541.023, subd. 7 (1998).

McDonald's has attempted to invoke the MTA by tracing its "source of title" back to the 1950 Robinson conveyance. The court of appeals essentially agreed and held that the source of McDonald's title was the 1950 conveyance. The court then distinguished between a "claim of title" and a "source of title." Under the court's analysis, subdivision 1 of the MTA contemplates two distinct interests. The court interpreted "claim of title" as the point at which McDonald's acquired its interest in what is now known as the McDonald's parcel, and the "source of [their] title" as the 1950 Robinson conveyance that created the signage easement. Accordingly, the court held that the 1950 conveyance became the fee simple "source" of McDonald's current interest.

Hersh disputes this conclusion, arguing that the certificate of title issued to McDonald's in 1984 when McDonald's acquired its parcel is its source of title. Hersh also maintains that when interpreted and applied correctly, "the MTA and the Torrens Act together provide that if a party's certificate of title for Torrens property has been registered with the Registrar of Title for more than 40 years, that party can use the MTA as a defense against hostile claims, such as a claim for an easement."

The MTA is not a model of clarity and the broad definition of "source of title" provides a reasonable basis for more than one interpretation. Therefore, our reading of subdivision 7 of the MTA leads us to conclude that it is ambiguous. *See Tuma*, 386 N.W.2d at 706 (stating that a statute is ambiguous when it can be given more than one reasonable interpretation). If a statute is ambiguous, we must ascertain and effectuate the intent of the legislature. *See* Minn. Stat. § 645.16 (1998). The legislature's intent may be ascertained by considering the "occasion and necessity for the law; [t]he circumstances under which it was enacted; [t]he mischief to be remedied; [t]he object to be attained; [and][t]he consequences of a particular interpretation." *Id.* The legislature has indicated that the MTA should be liberally construed to protect landowners from "ancient records" that "fetter the marketability of real estate," while the Torrens Act provides that a certificate of title should be "conclusive evidence of all matters and things contained in it." *Compare* Minn.Stat. § 541.023, subd. 5 *with* Minn.Stat. § 508.36. Our challenge·is to resolve the MTA's ambiguity in such a manner that effectuates the purpose of both the MTA and the Torrens Act.

We are persuaded that Hersh is correct in its argument that to affirm the court of appeals would destroy the binding and conclusive nature of certificates of title under the Torrens Act. It is difficult to see what purpose a certificate of title would serve if sellers, purchasers, mortgagors, title examiners, et al. could no longer rely on a certificate of title's conclusive nature. Indeed, such a holding would effectively ignore the purpose of registering title and remove the protection afforded by the Torrens Act. For example, the examination of title to Torrens property consists primarily of a review of the most recent certificate of title. To require a title examiner to expand his or her search if the certificate of title is not at least 40 years old will substantially increase the time, expense, and uncertainty in the examination of Torrens property, effectively destroying the purpose of the Torrens Act. There is nothing in the MTA to indicate that the legislature intended to abrogate the purpose of the Torrens Act through enactment of the MTA, and we cannot presume the legislature intended such an absurd result. *See* Minn.Stat. § 645.17(1) (1998) (interpreting statutes requires the courts to presume the "legislature does not intend a result that is absurd"). We

conclude that due to the unique nature of Torrens property, McDonald's "source of title" can refer only to the certificate of title that was issued to McDonald's in 1984 when it acquired fee simple title to its property.

For the foregoing reasons, we hold that the source of title held by an owner of Torrens property is the certificate of title issued to that owner upon his or her acquisition of fee simple title. Here, the "source of title" must properly be interpreted to refer to McDonald's receipt of its certificate of title issued in 1984, which certificate of title has not been of record for at least 40 years. Accordingly, we conclude that McDonald's lacks an adequate "source of title" to invoke the MTA as a defense to Hersh's claimed easement. Therefore, Hersh's easement is not presumed abandoned and is not extinguished under the provisions of the MTA.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.