*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0399**

State of Minnesota,
Respondent,

vs.

Amir Ali Saleh,
Appellant.

**Filed January 5, 2015
Affirmed
Rodenberg, Judge**

Ramsey County District Court
File No. 62-CR-13-5611

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John Choi, Ramsey County Attorney, Peter R. Marker, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Susan J. Andrews, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Hooten, Presiding Judge; Rodenberg, Judge; and Kirk, Judge.

## UNPUBLISHED OPINION

**RODENBERG**, Judge

Following his conviction for first-degree aggravated robbery, appellant Amir Ali

Saleh argues that he is entitled to a new trial because the recording of his police

interview, which was played for the jury, contained prejudicial material and that the district court erred by not providing limiting instructions to the jury. We affirm.

## FACTS

Shortly after 10:00 p.m. on July 30, 2013, H.R. left his place of employment, intending to walk to a nearby gas station. While he was walking and speaking with his sister on his iPhone, a dark blue sports-utility vehicle (SUV), occupied by four young men, stopped in front of him. The driver, who was later identified as appellant, said, "[H]ey, Amigo, your phone." When H.R. refused, the left-rear passenger, appellant's co-defendant, displayed a knife. Feeling threatened, H.R. gave the phone to appellant, who sped off. After appellant drove away, H.R. returned to his workplace, explained to one of the managers what had happened, and law enforcement was called.

St. Paul Police Officer Teip Vixayvong and his partners were on patrol when they received the call from dispatch. Almost immediately after the report was aired, Officer Vixayvong spotted the described SUV and stopped it. H.R. was brought to the area where the SUV was stopped for a "show-up." He identified appellant as the person who was driving the SUV at the time of the robbery. Police seized a knife from the pants pocket of the left rear passenger, and H.R.'s phone was found on the ground, near where the stop occurred.

Appellant was charged with one count of first-degree aggravated robbery in violation of Minn. Stat. § 609.245, subd. 1 (2012). On the first day of trial, just before jury selection, appellant's counsel advised the prosecutor that he had not received the recordings of the police interviews of all suspects in the case until that morning, and he

2

requested that specific portions of the recordings be redacted. Among other things, counsel requested redaction of the discussion related to appellant's religion, his living situation, and his having other warrants or being investigated for other crimes. The district court instructed the prosecutor to redact the following: (1) "any information on the [recording] that took place before [appellant] was advised of his Miranda rights"; (2) "any inquiry about . . . Ramadan, or [appellant's] religion in any way"; (3) any indication of appellant's living situation; and (4) "[i]nvestigation as to other crimes or other warrants that might be active that don't relate to this particular case." The district court also instructed the prosecutor to consult with defense counsel concerning the accuracy of the transcript after the redactions had been made.

In its case-in-chief, the state played a redacted version of the recording for the jury. The redacted version contained the following statements of the investigating officer, Sergeant Thomas Arnold: (1) "[a]nd the evidence is so overwhelming, I didn't even need to come talk to you," and (2) "[y]ou've already got one robbery in the hopper,"[1] to which appellant replied, "I sure do." No objection was raised concerning either the redaction of the recording or the playing of it for the jury. The district court neither interjected sua sponte nor provided a cautionary instruction to the jury regarding the statements.

The jury found appellant guilty of first-degree aggravated robbery, and the district court sentenced appellant to 58 months in prison. This appeal followed.

---

[1] The record reveals that appellant has a prior theft conviction but no prior robbery conviction.

**D E C I S I O N**

**I.**

Appellant argues that he was denied his right to a fair trial when the state played the recording of appellant's police interview in its case-in-chief, and the jury heard Sergeant Arnold (1) describe the evidence against appellant as "so overwhelming, I didn't even need to come talk to you," and (2) refer to the fact that appellant "already [had] one robbery in the hopper." Appellant contends that the error in allowing the jury to hear these statements requires a new trial under either the harmless-error or plain-error standard.

The harmless-error standard does not apply under these circumstances, as appellant failed to object to the claimed errors at trial. *See State v. Griffin*, 846 N.W.2d 93, 105 (Minn. App. 2014) ("Because appellant did not object . . . , and the error was not one of fundamental law or controlling principle, our review is limited to the plain-error standard.")

We may review for an unobjected-to error when the error is plain and affects a defendant's substantial rights. *State v. Kuhlmann*, 806 N.W.2d 844, 852 (Minn. 2011); *see* Minn. R. Crim. P. 31.02 ("Plain error affecting a substantial right can be considered by the [district] court on motion for a new trial, posttrial motion, or on appeal even if it is was not brought to the [district] court's attention."). The plain-error standard requires (1) an error, (2) that is plain, and (3) that affects substantial rights. *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998). An error is plain when it is clear or obvious. *State v. Strommen*, 648 N.W.2d 681, 688 (Minn. 2002). "An error affects substantial rights if the

4

error was prejudicial and affected the outcome of the case." *Kuhlmann*, 806 N.W.2d at 853. "[O]nly if all three prongs of the plain error rule are met will a court order a new trial and then only if the error 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" *Montanaro v. State*, 802 N.W.2d 726, 732 (Minn. 2011) (quoting *State v. Crowsbreast*, 629 N.W.2d 433, 437 (Minn. 2001)).

## A.    *"The evidence is so overwhelming" statement*

When applying the plain-error test to the statement of Sergeant Arnold that "the evidence is so overwhelming, I didn't even need to come talk to you," we conclude that the failure to redact this statement from the recording was not plainly erroneous.

In arguing that admitting the recording in evidence was plainly erroneous, appellant relies on *State v. Hogetvedt*, 623 N.W.2d 909 (Minn. App. 2001), *review denied* (Minn. May 29, 2001). In *Hogetvedt*, the appellant was charged with assaulting the victim. 623 N.W.2d at 911-12. On appeal, the appellant argued that, during direct examination, the investigating officer improperly testified to his opinion that the appellant was guilty of assaulting the victim. *Id.* at 914. The statement was objected to at trial. *Id.* During pretrial, the district court specifically told the prosecutor that it would be "totally improper" for the officer to testify concerning his opinion about the appellant's guilt and that the state was expected to caution the officer to keep those opinions to himself. *Id.* (emphasis omitted). We determined that the officer's testimony was "egregious" because he told the jury, in essence, that he believed the appellant was guilty of assaulting the victim, despite the instructions of the district court. *Id.* at 915. We ultimately concluded that the officer's testimony demonstrated that he expressed his

5

personal opinion as to who assaulted the victim, which made his testimony particularly harmful and prejudicial. *Id.* at 915-16.

This case is distinguishable from *Hogetvedt*. Here, the district court ordered the prosecutor to redact (1) "any information on the [recording] that took place before [appellant] was advised of his Miranda rights"; (2) "any inquiry about . . . Ramadan, or [appellant's] religion in any way"; (3) any indication of appellant's living situation; and (4) "[i]nvestigation as to other crimes or other warrants that might be active that don't relate to this particular case." Including the statement in the recording played for the jury was not clearly contrary to the district court's redaction instructions. Moreover, and unlike *Hogetvedt*, the statement here was not offered as expert opinion testimony of appellant's guilt. Instead, the statement occurred as part of a police interview seeking information from appellant concerning the circumstances surrounding the robbery. Because the statement occurred in the context of an interview, it was part of a conversation and was not being admitted as the opinion of Sergeant Arnold.

Even if we were to consider the inclusion of the statement to be plainly erroneous, the statement had no effect on appellant's substantial rights, as it was not prejudicial and did not affect the outcome of the case. *Kuhlmann*, 806 N.W.2d at 853. The recording was not the only evidence implicating appellant, nor even the most damaging evidence to the defense. The prosecutor called five witnesses at trial: H.R. and four law enforcement officials. H.R. identified appellant as the man who robbed him, and the testimony of the law enforcement officials corroborated H.R.'s testimony about the events surrounding the robbery. Further, appellant made several admissions during the recording, including that

6

he stopped the SUV so his codefendant could steal the phone and that the phone was thrown out of the SUV. In light of the strong evidence of appellant's guilt, the inclusion of the statement of Sergeant Arnold had no effect on the jury's verdict, and appellant's substantial rights were not implicated.

**B.** **_"One robbery in the hopper" statement_**

Appellant argues that it was plain error for the prosecutor not to have redacted Sergeant Arnold's statement that appellant "already [had] one robbery in the hopper." We agree that the failure to redact that statement from the recording was plainly erroneous, as it pertains to "other crimes . . . that don't relate to this particular case." Being within the parameters of the redaction instructions provided by the district court, the admission of the statement violated the district court's pretrial order.

Although plainly erroneous, we nevertheless conclude that the admission of this statement did not affect appellant's substantial rights. As previously stated, overwhelming evidence of appellant's guilt was presented to the jury. Further, the prior-conviction reference was brief, lacked detail, and was not referred to again throughout the duration of the trial. _See State v. Budreau_, 641 N.W.2d 919, 926 (Minn. 2002) (determining that it was not error to admit unobjected-to statements at trial that were brief, lacking in detail, presented only an imprecise suggestion of any prior bad acts by appellant, and never referred to again). Nothing in the record suggests that the jury was influenced in any significant way by the isolated reference to appellant's prior conviction. Because appellant's substantial rights were not affected by the inclusion of this statement, he is not entitled to a new trial.

## II.

Appellant also argues that the district court plainly erred in failing to reduce the impact of Sergeant Arnold's statements by instructing the jury that his recorded statements were not to be used to determine appellant's guilt or innocence. Because appellant did not request or object to the lack of a cautionary instruction, we review this argument under the plain-error standard of review previously discussed. *State v. Word*, 755 N.W.2d 776, 785 (Minn. App. 2008); *see also State v. Washington*, 693 N.W.2d 195, 205 (Minn. 2005) (providing that where a defendant at trial did not "seek a curative instruction or request a mistrial, the question [on review] becomes whether plain error occurred when the district court . . . did not act sua sponte to limit the testimony's impact by providing a curative instruction or to eliminate that impact by granting a mistrial").

The Minnesota Supreme Court has stated that a district court should not interfere with the trial strategy of a defendant, as acting sua sponte could "risk highlighting or enforcing rights that the defendant had, for tactical reasons, decided to waive." *Washington*, 693 N.W.2d at 205. Consistent with *Washington*, a district court must be mindful that giving cautionary instructions sua sponte might highlight an issue, aggravating error to a criminal defendant's detriment. In the absence of a request for an instruction in this circumstance, the district court properly gave no instruction sua sponte. The district court's inaction here was not only not plainly erroneous, it was not erroneous at all.

**Affirmed.**