CONCURRENCE
STRAS, Justice
(concurring).
The district court erred when it failed to explain to the jury what it means to “intentionally aid” another person in committing a crime. As the court observes, the error in this case is identical to the error from Eugene Milton’s murder trial. See State v. Milton, 821 N.W.2d 789, 806-07 (Minn.2012). In that case, we said that Milton was not entitled to relief for the deficient jury instruction because the error was not plain. Id. at 807. In this case, however, the court reaches the opposite conclusion. The question is why the court treats the two cases, both of which arrived at this court in an identical procedural posture, differently.
The answer, as the court admits, is simply that we decided Milton’s appeal first. Specifically, the court adopts a rule that requires appellate courts to evaluate the plainness of an error at the time of appeal rather than at the time of trial. Based on that rule, the court concludes that the error was plain in Kelley’s case, even though the law of accomplice liability was identical at the time of both trials. Because the court’s approach is inconsistent with the text, history, and purpose of Minnesota’s plain-error rule, I cannot join Part II of the court’s opinion. Accordingly, I concur only in the judgment.
I.
I begin with the text of Minn. R.Crim. P. 31.02, which states that “[pjlain error affecting a substantial right can be considered by the court ... on appeal even if it was not brought to the trial court’s attention.” The text of the rule provides a clue about its scope. The rule addresses “plain error” that could have been, but “was not[,] brought to the trial court’s attention.” Minn. R.Crim. P. 31.02. Notably, the Minnesota rule specifically emphasizes that the focus is on whether a party could have brought the “plain error” to the trial court’s attention. Compare Minn. R.Crim. P. 31.02 (referring to error that could have been “brought to the trial court’s attention”), with Fed.R.Crim.P. 52(b) (referring to error that could have been “brought to the court’s attention”). The text implies that the error must have been plain at trial, because if it had not been, then there would have been no “plain error” to bring to the trial court’s attention.
While helpful, the text of Rule 31.02 does not definitively answer the question of whether the rule requires courts to evaluate the plainness of the error at the time of trial or at the time of appeal. However, the text does not provide the only clue to Unlocking Rule 31.02’s meaning. The history and purpose of the rule further explain its scope.
A.
At early common law, a defendant’s failure to object to an error at trial resulted in the forfeiture of the right to have the alleged error reviewed on appeal. See State v. Hayes, 273 Wis.2d 1, 681 N.W.2d 203, 223 (2004) (Sykes, J., concurring) (describing the common-law rule). However, the harshness of the common-law rule led to the creation of various exceptions, including an exception for plain error that affects a defendant’s substantial rights. See State v. Schumacher, 144 Wis.2d 388, 424 N.W.2d 672, 676-79 (1988) (describing various exceptions). Minnesota’s plain-error standard, set forth in Rule 31.02, provides appellate courts with the discretion to remedy unpreserved errors, but only if *286 (1) there is error; (2) the error is plain; and (8) the error affects the defendant’s substantial rights. See State v. Griller, 588 N.W.2d 736, 740, 742 (Minn.1998). If the preceding requirements are satisfied, then an appellate court will address the error only if it seriously affected the fairness, integrity, or public reputation of judicial proceedings. Id.
■While Rule 31.02 provides a limited exception to the harsh consequences of the common-law forfeiture rule, it does not abandon its purpose, which was to encourage criminal defendants to contemporaneously object to any potential errors during a trial. See State v. Ramey, 721 N.W.2d 294, 298 (Minn.2006) (“Applying the plain error doctrine encourages defendants to object at trial....”). The plain-error standard provides an incentive for criminal defendants to object at trial by limiting the review of unpreserved errors on appeal and making relief discretionary. State v. Pearson, 775 N.W.2d 155, 161 (Minn.2009); Ramey, 721 N.W.2d at 298-99. Preserving an incentive to object is important because contemporaneous objections alert the trial court to potential errors when there is still an opportunity to correct them. See Ramey, 721 N.W.2d at 298-99 (explaining that contemporaneous objections “[are] preferred because the district court is in an [sic] unique position to [rule on the issue]”); Rairdon v. State, 557 N.W.2d 318, 323 n. 5 (Minn.1996) (“Objections provide the trial court an opportunity to prevent or cure the effects of [an error] and enhance a reviewing court’s ability to make adequate judgments of whether [an error] has in fact occurred.” (citation omitted)); see also, e.g., People v. Carines, 460 Mich. 750, 597 N.W.2d 130, 138 (1999) (“Trial is ‘by far the best time to address a defendant’s constitutional and nonconstitu-tional rights.’ ” (quoting People v. Grant, 445 Mich. 535, 520 N.W.2d 123, 130 (1994))).
A different rule — one that treats unpre-served and preserved errors alike — would permit defendants to lie in wait and raise an error on appeal if they do not receive a favorable result at trial. In contrast, the plain-error standard, which raises the bar for relief based on unpreserved errors, discourages the strategic withholding of objections in order to gain the proverbial “second bite at the apple” on appeal. See Puckett v. United States, 556 U.S. 129, 134, 140, 129 S.Ct. 1423, 173 L.Ed.2d 266 (2009).
Assessing plainness at the time of trial better serves the objective of encouraging criminal defendants to contemporaneously object to potential errors that occur during a trial. Error that is plain — that is, clear or obvious, see Ramey, 721 N.W.2d at 302—when it is committed by definition is (or should be) apparent to the trial court. When an error is plain at the time of trial, the trial court should be able to recognize and correct the error without the parties’ help, so there is less reason to insist on an objection that may be unnecessary. And because there is little benefit from requiring a party to inform the trial court about an error that is obvious, there is correspondingly little damage done to the contemporaneous-objection requirement when relief is granted for an unpreserved error that was plain at the time of trial.[1] See *287 Henderson v. United States, — U.S. -, -, 133 S.Ct. 1121, 1132, 185 L.Ed.2d 85 (2013) (Scalia, J., dissenting) (“Objection is not so much needed when the error ought to be plain to the court and to the prosecution.”); State v. Eldredge, 773 P.2d 29, 36 (Utah 1989) (“[W]hen an error is plain, a trial court can legitimately be said to have had a reasonable opportunity to address and correct it, even in the absence of an objection.”). In short, a plain-at-the-time-of-trial rule tempers the harshness of forfeiture in cases in which an objection is largely unnecessary, while it leaves the incentive to object in place for those instances in which an objection is most helpful to the trial court in ensuring that the defendant receives a fair trial.[2] See Ramey, 721 N.W.2d at 299 (“The [plain-error] doctrine employs a careful balancing of our need to encourage all trial participants to seek a fair and accurate trial the first time around against our insistence that obvious injustice be promptly redressed.” (citations omitted) (internal quotation marks omitted)).
The plain-at-the-time-of-appeal rule, in contrast, turns the plain-error rule from a neatly tailored complement to the contemporaneous-objection requirement into a lottery for dilatory litigants. A straightforward example illustrates the inequities of the rule that the court adopts. Suppose that the trials of two defendants occur on the same day and the trial court in each case reads the same model jury instruction to the jury. There is no ease law indicating whether the model instruction accurately states the law, and neither defendant objects to the instruction. Both defendants are found guilty, convicted, and then appeal. The cases go before different panels of the court of appeals— again on the same day — and each defendant argues that the model instruction was erroneous. One panel finishes its opinion faster. It determines that the jury instruction was erroneous, but that the defendant is not entitled to relief because the error was not plain. The other panel issues its decision a few days later and reaches the same conclusion about the jury instruction. This time, however, the panel must hold that the second defendant is eligible for relief (assuming that the other requirements of the plain-error standard are met), because the error has now become plain in light of the first panel’s decision, even though the error — and everything else about the case — is identical to the first case. I see no logical reason to treat the two cases differently when the differing treatment is based on nothing more than which of the two appeals happens to be decided first.
The above example is an abstracted summary of this case and State v. Milton.[3] *288 The court insists that Kelley and Milton are not similarly situated because Milton’s appeal was decided first. Specifically, the court states that Milton and Kelley are “no longer similarly situated because the law ha[s] changed during the pendency of Kelley’s appeal.” That is precisely my point. The fact that Milton’s appeal came first is happenstance, and making the availability of relief turn on that fact does not encourage contemporaneous objections, promote fairness, or serve any other conceivable purpose of the plain-error rule. The court says that, by treating Kelley and Milton alike, I “do[ ] not promote fairness.” The court confuses fairness with leniency, apparently motivated by the desire to give relief to as many defendants as possible. As I understand it, fairness means treating similarly situated people similarly, so there is nothing unfair about insisting that we treat Kelley and Milton alike when their appeals are identical in all relevant respects. Cf. Desist v. United States, 394 U.S. 244, 258, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969) (Harlan, J., dissenting) (arguing that when a court is presented with similarly situated defendants, “we must grant [or not grant] the same relief or give a principled reason for acting differently”). By contrast, fairness is ill served by the court’s rule, under which Milton, who brought this instructional error to our attention, did not receive any benefit from his efforts, while Kelley, who may not even have raised the issue if not for Milton, enjoys the benefit of the rule from Milton’s case.
Moreover, even aside from its inequities, the plain-at-the-time-of-appeal rule weakens the incentives for criminal defendants to identify and bring potential errors to the trial court’s attention. Cf. Henderson, — U.S. at -, 133 S.Ct. at 1134 (Scalia, J., dissenting) (“It is remarkably naive to disbelieve the proposition that lessening the costs of noncompliance with [the contemporaneous-objection requirement] diminishes the incentives to be diligent in objecting.”). And it does so in instances in which a contemporaneous objection is most valuable. The facts of this case illustrate the point. At the time of Kelley’s trial, we had never specifically said that a district court is required to explain to the jury what it means to “intentionally aid[ ]” another under Minn.Stat. § 609.05, subd. 1 (2012), but, as we later recognized in Milton, our cases had implied that such an explanation was necessary. See Milton, 821 N.W.2d at 807. Had Kelley contemporaneously objected to the accomplice-liability instruction at trial and referred the district court to State v. Mahkuk, 736 N.W.2d 675, 682 (Minn.2007)—the case relied upon in Milton — it is possible the district court would have concluded that the model accomplice-liability jury instruction was deficient and would have corrected the instruction. In other words, a contemporaneous objection in this case could have prevented the error altogether by allowing the district court to make a deliberate, informed decision about the legal accuracy of the accomplice-liability model jury instruction. Cf. Henderson, — U.S. at -, 133 S.Ct. at 1133 (Scalia, J., dissenting) (“In the difficult and often hectic process of conducting a trial, a judge depends on the parties — ‘officers of the court’ — to flag less-than-obvious issues that might otherwise escape his notice.”).
B.
The court agrees that “the plain-at-the-time-of-trial rule encourages timely objections at trial,” but considers that fact irrelevant because the only purpose of the plain-error rule “is to provide a means for *289 an appellate court to remedy unobjected-to errors.” The court’s insistence that the forfeiture rule and the plain-error rule “have different purposes and are guided by different principles” is both confused and confusing.
The court’s position is confused because the plain-error rule does not actually have a different purpose than the common-law forfeiture doctrine. We have repeatedly recognized that the purpose and effect of the plain-error rule, like the common-law forfeiture doctrine, is to encourage contemporaneous objections. See, e.g., Pearson, 775 N.W.2d at 161 (“The plain error doctrine encourages defendants to object while in the trial court so that any errors can be corrected before their full impact is realized.”); Ramey, 721 N.W.2d at 298-99; see also Puckett, 556 U.S. at 184-36, 129 S.Ct. 1423 (recognizing that the plain-error rule is tied directly to the contemporaneous-objection requirement as it “sets forth the consequences” for failing to object and promotes “judicial efficiency”).
The court’s position is confusing because the court elsewhere states that the plain-error rule “carefully balances” the dual purposes of encouraging contemporaneous objections and allowing appellate courts to correct prejudicial error. The court’s inconsistency on this point is understandable, however, because it would be impossible to explain why the rule limits appellate courts to correcting only plain errors if its only purpose were “providing a means for appellate courts to remedy forfeited errors.” If the plain-error rule really is just an invitation for appellate courts to review unpreserved errors to avoid “a serious miscarriage of justice,” as the court suggests, there would be no reason for the rule to be concerned with the plainness of the error at all. After all, the third and fourth prongs of the plain-error standard are adequate to ensure that the error is sufficiently important to merit reversal. See Griller, 583 N.W.2d at 740. Accordingly, the fact that the rule does require the error to be plain, Minn. R.Crim. P. 31.02; see also Griller, 583 N.W.2d at 740, demonstrates that error correction is not, and cannot be, the only purpose of the plain-error rule.[4]
In my view, the rule that strikes the proper balance between remedying errors and encouraging timely objections is the plain-at-the-time-of-trial approach, not an *290 approach that turns on which appeal happens to be decided first.
II.
The court offers four additional justifications for the plain-at-the-time-of-appeal approach. None is persuasive.
A.
The court first claims that precedent dictates its decision in this case. In particular, the court relies on a statement from State v. Baird that, “ ‘[t]o satisfy the second prong [of the plain-error rule,] it is sufficient that the error is plain at the time of appeal.’ ” 654 N.W.2d at 113 (quoting Griller, 583 N.W.2d at 741). The statement from Baird supports the court’s approach, to be sure, but the truth is that our statements on the topic have been varying and inconsistent. For example, we stated as follows in Rairdon v. State: “the trial error must have been so clear under applicable law at the time of conviction ... that the defendant’s failure to object — and thereby present the trial court with an opportunity to avoid prejudice— should not forfeit his right to a remedy.” 557 N.W.2d 318, 323 (Minn.1996) (emphasis added). In a number of subsequent cases, we relied on Rairdon as support for a plain-at-the-time-of-trial rule. See, e.g., State v. Tscheu, 758 N.W.2d 849, 863 (Minn.2008); State v. Manthey, 711 N.W.2d 498, 504 (Minn.2006); State v. Pilot, 595 N.W.2d 511, 518 (Minn.1999).
However, we did not so much as acknowledge Rairdon in Baird, or in State v. Griller, the decision on which Baird relied. Indeed, we have never given much attention to the timing of the plainness requirement in any of our opinions, which likely accounts for our varying statements. In Griller, the State conceded that the error was plain under the federal plain-error rule and did not ask us to adopt a different approach under Minnesota law. See 583 N.W.2d at 741 (citing Johnson v. United States, 520 U.S. 461, 468, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997)). And in Baird, far from “squarely addressing] the issue” as the court claims, we simply quoted our statement in Griller without comment or analysis. See 654 N.W.2d at 113. In fact, Rairdon probably contains our most complete analysis on the question because we actually provided a reason for selecting one approach over the other. Specifically, we stated that a plain-at-the-time-of-trial rule ensured that the defendant could not “reap any benefit from [intervening changes in the law] merely because he waited nine years to seek review.” Rairdon, 557 N.W.2d at 323. Compare id., with Baird, 654 N.W.2d at 113, and Griller, 583 N.W.2d at 741.
The court dismisses our statement in Rairdon as dicta, however, because we ultimately determined that any error in that case had not affected the defendant’s substantial rights. See Rairdon, 557 N.W.2d at 324-25. Thus, according to the court, our articulation of the plainness requirement in Rairdon “was not essential to our decision.” The court’s broad pronouncements about dicta undermine its own analysis and prove too much. Under the court’s approach, key aspects of our articulation of the plain-error rule in Gril-ler were “mere dicta,” as were the Supreme Court’s statements about the first three prongs of the plain-error rule in landmark cases such as Johnson and United States v. Olano, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)—decisions that the court relies on to support its preference for the plain-at-the-time-of-appeal rule. See Griller, 583 N.W.2d at 742 (concluding that the defendant had not satisfied the fourth prong); see also Johnson, 520 U.S. at 470, 117 S.Ct. 1544 (concluding that the defendant had not satis *291 fied the fourth prong); Olano, 507 U.S. at 741, 113 S.Ct. 1770 (concluding that the defendants had not satisfied the third prong). Even the analysis from Milton, which forms the basis of Kelley’s appeal, would be dicta under the court’s approach because our discussion of the error in that case — that the jury was not told what it means to “intentionally aid” another in committing a crime — was not essential to our ultimate conclusion that Milton was not entitled to relief. See 821 N.W.2d at 807.
Only by disregarding a line of cases can the court conclude that precedent requires us to adopt the plain-at-the-time-of-appeal approach. See, e.g., State v. Bobo, 770 N.W.2d 129, 143-44 (Minn.2009); Tscheu, 758 N.W.2d at 863; Arredondo v. State, 754 N.W.2d 566, 574 (Minn.2008); Manthey, 711 N.W.2d at 504; State v. Blanche, 696 N.W.2d 351, 375 (Minn.2005); State v. Hunt, 615 N.W.2d 294, 302 (Minn.2000); Pilot, 595 N.W.2d at 518. In short, even a cursory review of our cases from the past 20 years reveals that we have never actually resolved which rule — plain-at-the-time-of-trial or plain-at-the-time-of-appeal — controls under Rule 31.02. Compare, e.g., Tscheu, 758 N.W.2d at 863 (following Rairdon), with, e.g., State v. Jones, 753 N.W.2d 677, 689 (Minn.2008) (following Baird and Griller). Accordingly, this case presents us with a clear opportunity to reconcile our cases and to definitively decide which of the two rules is more consistent with Rule 31.02. Cf. Oanes v. Allstate Ins. Co., 617 N.W.2d 401, 405-06 (Minn.2000) (stating that the contradiction between two lines of cases can be “sufficient to override stare decisis concerns”).
B.
The court correctly observes that the Supreme Court of the United States decided in Henderson v. United States that whether an error is plain must be determined at the time of appeal, not at the time of trial, under Fed.R.Crim.P. 52(b). — U.S. at -, 133 S.Ct. at 1130-31. The court goes on, however, to treat Henderson as if it were binding on this court. For example, the court says that the Supreme Court’s reaffirmation of the plain-at-the-time-of-appeal rule in Henderson is even “[m]ore important ]” than our own precedent on the issue.
The court seems to forget that we have routinely interpreted our own rules of procedure independently of the Supreme Court, particularly when the language of our rule is different from a corresponding federal rule, because the Supreme Court’s interpretation is “ ‘instructive,’ but not binding” on us. Walsh v. U.S. Bank, N.A., 851 N.W.2d 598, 603 (Minn.2014) (quoting T.A. Schifsky & Sons, Inc. v. Bahr Constr., LLC, 773 N.W.2d 783, 787 n. 3 (Minn.2009)) (declining to adopt the “plausibility” standard from Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), in the context of a motion to dismiss brought under Minn. R. Civ. P. 12.02(e)). In Ramey, for instance, we held that, in cases involving prosecutorial misconduct, the State bears the burden of persuasion to disprove an effect on a defendant’s substantial rights under the plain-error standard, even though the approach we adopted was inconsistent with Supreme Court case law. 721 N.W.2d at 301-02; see also id. at 303 (Anderson, Paul, J., concurring) (recognizing that “the majority’s holding represented] a sharp and radical departure — a 180° turn — from our court’s and the United States Supreme Court’s jurisprudence as to the burden of persuasion on the third prong of the plain error test”). There is no reason we cannot adopt our own interpretation of Minn. R.Crim. P. 31.02 in this case, just as in *292 Ramey. At the very least, Ramey and Walsh establish that the Supreme Court’s interpretation of a federal rule is not binding on us, particularly when the language of our rule differs from its federal counterpart.[5]
C.
The court also invokes the principle that appellate courts generally apply the law in effect at the time of their decision. The court correctly articulates that venerable principle, but then fails to acknowledge that a plain-at-the-time-of-trial rule is also consistent with that principle. Appellate courts have long been required to “apply the law in effect at the time [they] render [their] decision.” Bradley v. Sch. Bd. of City of Richmond, 416 U.S. 696, 711, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974); see also United States v. Schooner Peggy, 5 U.S. (1 Cranch) 103, 110, 2 L.Ed. 49 (1801) (articulating the rule).
However, recitation of the general principle provides guidance only on how to determine whether an error exists, not the point at which an appellate court must evaluate the plainness of that error. In fact, the court’s approach mistakenly conflates two analytically distinct concepts: the law of retroactivity and plain-error review. In criminal cases, retroactivity is about what law to apply, which usually turns on whether a case has become final.[6] See State v. Houston, 702 N.W.2d 268, 271 (Minn.2005) (stating that “[t]he principle of finality is key” in determining whether changes in the law are retroactive). Plain-error review, by contrast, is about determining whether to remedy a forfeited error. In assessing whether an error is plain, we have never asked whether a rule of criminal procedure is retroactive.
The court nevertheless asserts that, if “[flollowed to its logical conclusion,” a plain-at-the-time-of-trial rule would “effectively modifly] our retroactivity jurisprudence by limiting the application of a new rule to cases that arise after the new rule is announced.” The court’s erroneous critique is simply a product of its misplaced belief that there is an inextricable link between retroactivity and plain-error review. In reality, whatever rule we adopt in this case will have no impact on our retroactivity jurisprudence because the difference between the plain-at-the-time-of-trial and the plain-at-the-time-of-appeal approaches relates solely to whether a criminal defendant is entitled to relief from forfeiture under Minn. R.Crim. P. 31.02. After all, whether an error is plain is not about “what the law is” but “how clear the law is,” United States v. Escalante-Reyes, 689 F.3d 415, 429 (5th Cir.2012) (Smith, J., dissenting), and there is no reason why a rule or statute focusing on the latter ques *293 tion must necessarily be limited to the law in effect at the time of decision, cf. Landgraf v. USI Film Prods., 511 U.S. 244, 273-80, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) (explaining that the law in effect at the time of decision generally governs unless a statute states otherwise).
D.
Finally, the court is concerned that assessing whether an error was plain when it occurred would be “cumbersome and complex” and would call for “a kind of temporal ping-pong.” The court’s apparent concern is that it would be disorienting for an appellate court to first examine current law to determine whether an error has occurred and then turn to the law governing the error at the time of trial to determine whether the error was plain.
Courts routinely look to the laws and facts in existence at various times. It may be inconvenient, but the inquiry “is really not all that hard.” Henderson, — U.S. at -, 133 S.Ct. at 1135 (Scalia, J., dissenting). In postconviction cases, for example, we routinely decide both what the law was at the time of conviction and whether the petitioner knew or should have known about a legal claim on direct appeal. See King v. State, 649 N.W.2d 149, 156 (Minn.2002) (applying the procedural bar from State v. Knaffla, 309 Minn. 246, 243 N.W.2d 737 (1976)). And in official-immunity cases, we evaluate the law in effect at the time of an injury to determine whether the law clearly prohibited a public official’s discretionary actions when they occurred. See Rico v. State, 472 N.W.2d 100, 107-09 (Minn.1991). There is nothing to suggest that a retrospective examination of the law in plain-error cases would be any more taxing on courts than in these other areas of the law.
III.
For the foregoing reasons, I would affirm Kelley’s conviction on the ground that the error in his case was not plain.

. I do not mean to suggest that there is no incentive to object to a plain error at trial. The primary incentive, of course, is that the trial court, once informed of the error, might remedy it before it occurs. Moreover, the plain-error rule is harder to satisfy than the harmless-error rule — which governs appellate review of preserved error — even when an error is plain. In particular, as I have explained elsewhere, the plain-error standard generally places the burden of showing prejudice on the party seeking relief, makes relief *287 discretionary, and sets a high bar for the exercise of that discretion. See State v. Little, 851 N.W.2d 878, 888-89 (Minn.2014) (Stras, J., concurring in part, dissenting in part) (contrasting the plain-error and harmless-error standards).

. A plain-at-the-time-of-trial rule generally assesses whether an error is plain at the time that the error occurs, rather than at some other point in a criminal defendant’s trial. Nevertheless, I adopt the broad phrase, "plain at the time of trial,” to account for the possibility that, for a limited class of errors, a criminal defendant can adequately preserve a claim by raising an objection at a subsequent point during a trial. See, e.g., Minn. R.Crim. P. 26.03, subd. 12(l) (giving parties an opportunity to raise objections and request curative instructions after closing arguments, outside the jury’s presence); id., subd. 19(4)(f) ("Objections to instructions claiming error in fundamental law or controlling principle may be included in a motion for a new trial even if not raised before deliberations.”).

. Of course, the two cases here did not proceed concurrently, as in the example, but they may as well have because the law of accom *288 plice liability did not change between the two trials.

. The court elsewhere says that, "[although we have on occasion provided greater protection or relief to criminal defendants, we have never provided less relief.” In emphasizing the point further, the court implies that, if criminal defendants in Minnesota were to "receive less relief than their federal counterparts,” it would somehow be unjust or conflict with precedent. Coupled with the court's discussion of the plain-error standard, which it says is concerned primarily with remedying unfairness, the clear implication is a one-way ratchet in favor of criminal defendants, requiring Minn. R.Crim. P. 31.02 to provide at least as much, and sometimes more, protection to criminal defendants than the corresponding federal rule. However, in contrast to parallel constitutional provisions, in which the United States Constitution provides a floor with respect to those rights that are incorporated against the states, California v. Greenwood, 486 U.S. 35, 43, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988); State v. Fuller, 374 N.W.2d 722, 726-27 (Minn.1985); O’Connor v. Johnson, 287 N.W.2d 400, 405 (Minn.1979), nothing prevents a state court from adopting a procedural rule that provides less protection to criminal defendants than a comparable federal rule. To the extent that the court concludes otherwise, it is wrong. Our task in interpreting procedural rules is to adopt the better interpretation of the rule’s text, see State v. Underdahl, 767 N.W.2d 677, 682 (Minn.2009), whether or not the interpretation we adopt is more or less restrictive than a corresponding federal rule. Notably, the court’s analysis hardly addresses the text of Rule 31.02 at all, much less explains why its interpretation more closely aligns with the rule’s text.

. Compare Minn. R.Crim. P. 31.02 ("Plain error affecting a substantial right can be considered by the court on motion for new trial, post-trial motion, or on appeal even if it was not brought to the trial court’s attention.”), with Fed.R.Crim.P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court’s attention.”).

. The court is correct when it states that the law of retroactivity can lead to inconsistent treatment of criminal defendants, but the court presents no reason why inconsistent treatment in one area justifies inconsistent treatment in another area. In the retroactivity context, inconsistent treatment of defendants is sometimes required by the "principle of finality!,] which is essential to the operation of our criminal justice system.” Teague v. Lane, 489 U.S. 288, 309, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (plurality opinion); see also Chambers v. State, 831 N.W.2d 311, 325 (Minn.2013) (noting the importance of "finality and providing a bright-line rule for when relief is to be retroactive”). However, the court proposes no correspondingly important value justifying differing treatment of defendants in plain-error review.